IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ismail Dickerson, | ) | C/A No.:1:10-1625-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| City of Charleston Police Department; | ) | |
| Officer Sgt. L. Reed; Officer B. | ) | |
| Wanamaker; Officer Galluccio; Officer | ) | |
| Riccio; Officer Ambrose; K9-SPO, | ) | |
| Officer Pitchford; K9-SPO, Officer | ) | |
| O'Dell; K9-SPO, Officer D.C. | ) | |
| Washington; Officer T.J. Dalinsky; | ) | |
| CPD Detective Osborne; CPD | ) | |
| Detective/Investigator Kosarko; | ) | |
| Honorable Magistrate Judge Mary | ) | |
| Brown Holmes; and Charleston County | ) | |
| Magistrate Court Administration, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, who is proceeding pro se in this action, has alleged violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Before the court are: (1) Motion to Dismiss by Charleston County Magistrate Court ("CCMC") Administration and Magistrate Judge Holmes [Entry #26]; (2) Defendants' Motion to Stay [Entry #57]; (3) Defendants' Motion for Summary Judgment [Entry #74]; (4) Plaintiff's Motion for Summary Judgment [Entry #75]; and (5) Plaintiff's Motion to Substitute a Party [Entry #105]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule

73.02(B)(2)(d) (D.S.C.). Because the motions are dispositive, this Report and Recommendation is entered for review by the district judge.

I.    Factual and Procedural Background

Plaintiff alleges that on April 28, 2009, Defendants Reed, Wannamaker, Gallucio, Riccio, Ambrose, Dalinsky, Pitchford, O'Dell, and Washington attacked him with their weapons drawn before punching him in his face and knocking him to the ground. Am. Compl. [Entry #20-2 at 3]. Plaintiff alleges that once he was on the ground, Defendants began screaming at him regarding a gun, to which he responded that he did not possess a gun. *Id.* According to Plaintiff, Defendants began kicking and stomping on him while asking the location of a gun. *Id.* Plaintiff alleges Defendants next began lifting him off of the ground and body slamming him numerous times, during which time he felt his leg snap, causing him serious pain throughout his entire body. *Id.* After feeling pain in his leg, Plaintiff alleges he told officers that his leg was broken, at which time they allegedly began focusing their attack on his leg. *Id.* Next, Plaintiff was taken to the Medical University of South Carolina ("MUSC") for treatment. [Entry #20-2 at 3–4]. Plaintiff claims he was examined and x-rayed at MUSC, where it was determined his tibia, fibula, and bones underneath his knee were broken. *Id.* at 4. He was charged with armed robbery, possession of a firearm while committing a violent crime, and possession of cocaine. *Id.*

Days later while Plaintiff remained at MUSC, he alleges that Defendants Osborne and Kosarko came to his hospital room and accused him of rape. *Id.* Plaintiff further alleges that Defendants Osborne and Kosarko threatened to charge him with rape and

2

attempted to force him to provide samples of his blood, which he refused to do. *Id.* Additionally, Plaintiff claims Defendants Osborne and Kosarko brought a sketch drawing to the hospital of a suspect in the rape case and passed the drawing out to several doctors and nurses, telling them that Plaintiff had raped a woman. [Entry #20 at 4]. Plaintiff also alleges that Defendants Osborne and Kosarko refused to remove Plaintiff's ankle shackles when he was being x-rayed, which Plaintiff believes exposed him to high levels of deadly radiation. *Id.* Additionally, Plaintiff claims Defendants Osborne and Kosarko manipulated and coerced statements from co-defendants involved in the armed robbery. *Id.*

Plaintiff also alleges that Defendant Holmes conspired with Defendants Osborne and Kosarko to give him an unaffordable, outrageous bond in connection with his armed robbery charges, as well as to make him a suspect in an unrelated rape case. [Entry #20 at 5]. Further, Plaintiff alleges that Defendant Holmes signed an illegal search warrant authorizing Defendants Osborne and Kosarko to take samples of his blood for use in an unrelated rape case. *Id.*

Plaintiff filed this lawsuit on June 25, 2010 and alleges multiple civil rights violations under 42 U.S.C. § 1983, including excessive force, false arrest, false imprisonment, assault and battery, harassment, defamation, illegal search and seizure and civil conspiracy. [Entry #20 at 6]. Plaintiff seeks damages of $100 million from Defendants. *Id.* Further, Plaintiff requests that every police officer involved in his arrest be terminated from the City of Charleston Police Department and be forever barred from obtaining employment with any law enforcement agency. *Id.* Additionally, Plaintiff seeks

to have his current and future medical bills paid by the City of Charleston Police Department. *Id.* Finally, Plaintiff requests an injunction requiring the return of his blood samples to him. *Id.*

Defendant Holmes and the CCMC filed a motion to dismiss based on judicial immunity. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. [Entry #27]. Plaintiff filed a timely response in opposition to Defendants' Motion. [Entry #43]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants Holmes and the Charleston County Magistrate Court Administration be dismissed and the case be stayed pending resolution of the pending criminal charges against Plaintiff.

II.     Discussion

   A.     Motion to Dismiss [Entry #26]

Plaintiff's claim against Judge Holmes is barred by the doctrine of judicial immunity. The Fourth Circuit has previously addressed the doctrine of absolute immunity for judges as follows:

> The absolute immunity from suit for alleged deprivation of rights enjoyed by judges is matchless in its protection of judicial power. It shields judges even against allegations of malice or corruption. . . . The rule is tolerated, not because corrupt or malicious judges should be immune from suit, but only because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively,

> without apprehension that they will be subjected to burdensome and vexatious litigation.

*McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972) (citations omitted), *overruled on other grounds*, *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

The doctrine of absolute immunity for acts taken by a judge in connection with his or her judicial authority and responsibility is well established and widely recognized. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (judges are immune from civil suit for actions taken in their judicial capacity, unless "taken in the complete absence of all jurisdiction"); *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987) (a suit by South Carolina inmate against two Virginia magistrates); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985 ) (absolute immunity "is an immunity from suit rather than a mere defense to liability").  Defendant Holmes' decisions regarding the amount of a criminal bond and whether or not to issue a search warrant are part of her judicial functions as a member of the State of South Carolina's judiciary.  Plaintiff asserts no allegations against Defendant Holmes involving activities that fall outside of her performance of judicial duties.  Therefore, Plaintiff's claims against Defendant Holmes must be dismissed.

The CCMC and its administration[1] are likewise protected from suit by the Eleventh Amendment. The Eleventh Amendment forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U. S. 651, 663 (1974).  Although this language does not explicitly prohibit a citizen of a state from suing his own state in federal court, the Supreme Court in *Hans v. Louisiana*, 134 U. S. 1 (1890), held that the purposes of the Eleventh Amendment (i.e. protection of a state treasury) would not be served if a state could be sued by its citizens in federal court.  The Eleventh Amendment also bars this court from granting injunctive relief against the state or its agencies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("the relief sought by plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment").   State agencies and state instrumentalities, such as the CCMC,  share this immunity when they are the alter egos of the state. *See Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997).

---

[1] To the extent that Plaintiff intended to name the administration as being a separate entity from the court, the Amended Complaint would still be subject to summary dismissal because an administration is not a "person" who can "act under color of state law." Use of the term "staff" or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Barnes v. Baskerville Corr. Cen. Med. Staff*, No. 3:07CV195, 2008 WL 2564779 (E.D. Va. June 25, 2008).

It is therefore recommended that the motion to dismiss by Defendants Holmes[2] and CCMC [Entry #26] be granted.

  B. Motion to Stay [Entry #57]

Defendants request the court stay this matter pending the resolution of the criminal charges against Plaintiff. The undersigned finds that a stay in this case is appropriate, as the resolution of the state criminal charges could affect the outcome of this case.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a state prisoner cannot bring a § 1983 suit for damages where a judgment in favor of the prisoner would necessarily imply the invalidity of his conviction or sentence. *Id.* at 486. In *Wallace v. Kato*, 127 S. Ct. 1091 (2007), the Court clarified that *Heck* was inapplicable in the pre-conviction setting:

> [T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn. . . . What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck:* that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, . . . all this at a time when it can hardly be known what evidence the prosecution has in its possession.

---

[2] Counsel for Defendants have informed the court that Defendant Holmes has passed away during the pendency of this matter. [Entry #95]. If the district judge accepts the recommendation, Defendants' motion to dismiss on this basis [Entry #95] will be moot.

7

*Wallace*, 127 S. Ct. at 1100 (citations omitted). In so holding, the *Wallace* court noted that a stay may be appropriate when a plaintiff files a false arrest claim prior to the resolution of criminal charges. Specifically, the court found:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. . . .

*Id.* at 1098.

In the instant case, Plaintiff has filed a claim for false arrest, and the allegations in support of his claim are related to issues that will likely be ruled upon in the state court proceedings. Therefore, based on the guidance set forth by the *Wallace* court, the undersigned recommends this case be stayed pending resolution of Plaintiff's criminal charges. It is further recommended that Plaintiff be ordered to apprise the court of the status of the criminal proceedings every six months and to notify the court when the criminal charges are resolved and the stay can be lifted.

C.    Remaining Motions

In light of the undersigned's recommendation that the case be stayed, it is also recommended that the parties' cross motions for summary judgment [Entry #74, #78] and Plaintiff's motion to substitute a party [Entry #105] be denied without prejudice as

premature at this time. If the district judge accepts this recommendation, all other motions will be rendered moot.

III.   Conclusion

For the foregoing reasons, the undersigned recommends Defendants Holmes and CCMC's Motion to Dismiss [Entry #26] and Defendants' Motion to Stay [Entry #57] be granted. It is further recommended that the parties' cross motions for summary judgment [Entry #74, #78] and Plaintiff's motion to substitute a party [Entry #105] be denied without prejudice as premature at this time. If the district judge accepts these recommendations, all other motions will be rendered moot.

IT IS SO RECOMMENDED.

August 10, 2011                                  Shiva V. Hodges
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**